FILED
John E. Triplett, Acting Clerk
United States District Court

*By jburrell at 3:50 pm, Feb 19, 2021*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) **INFORMATION NO.**   6:21cr-002 |
| | ) |
| **v.** | ) **18 U.S.C. § 1343** |
| | ) **Wire Fraud** |
| **TRACY KIRKLAND** | ) |
| | ) **18 U.S.C. § 2** |
| | ) **Aiding and Abetting** |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this case:

1.     Financial Institution 1 was a federally insured financial institution based in Georgia.  Financial Institution 1 was an SBA Preferred Lender and participated as a PPP lender to small businesses.

### The Small Business Administration and the CARES Act

2.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3.     As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders that had government-backed guarantees. The SBA also provided direct loans.

4.     In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19

pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and/or administered by the SBA.

The Paycheck Protection Program

5. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (i) average monthly payroll expenses; and (ii) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7. A PPP loan application was required to be processed by a participating financial institution ("lender"). If a PPP loan application was approved, the lender

funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8.     PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

The Economic Injury Disaster Loan Program

9.     The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10.     The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

11.     In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its

3

operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

12.     EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application was approved, was determined based, in part, on the information provided in the application concerning the number of employees, gross revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued. directly by the SBA. EIDL funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds were not permitted to be used for the same purpose as the PPP funds.

The Scheme to Defraud

13.     From in or around May 2020, continuing up to and including at least in or around August 2020, Defendant **KIRKLAND** devised a scheme to defraud by submitting and causing to be submitted false and fraudulent loan applications (i) to the SBA in order to obtain funds through the EIDL program and (ii) to Financial Institution 1 in order to obtain funds through the PPP.

## Object of the Scheme to Defraud

14.     It was the purpose of the scheme for Defendant **KIRKLAND** to unjustly enrich herself and others by obtaining EIDL and PPP loan proceeds under false and misleading pretenses, including by making false statements that she operated a she operated a business named "Kirklands Hair N Beauty" located in Swainsboro, Georgia, when she did not.

## Manner and Means

15.     On or about July 30, 2020, Defendant **KIRKLAND** applied electronically for an EIDL from the SBA ("SBA Loan #6059798202). In connection with her EIDL Application, Defendant **KIRKLAND** falsely affirmed, among other information, that she operated a business named "Kirklands Hair N Beauty" located in Swainsboro, Georgia, and that the business had three employees, and in the twelve months prior to the disaster, had $253,423 in gross revenues and $120,673 in cost of goods sold. On or about August 10, 2020, EIDL Application was approved for an EIDL loan in the amount of $66,400.

16.     On or about August 12, 2020, approximately $66,400 in PPP funds were deposited into an account controlled by Defendant **KIRKLAND** at Financial Institution 1.

## COUNT ONE
*Wire Fraud*
18 U.S.C. § 1343

17.    Paragraphs 1-16 of this Information are realleged and incorporated herein.

18.    Beginning in or about May 2020, and continuing until in or about August 2020, within the Southern District of Georgia, and elsewhere, the defendant,

### TRACY KIRKLAND,

and others known and unknown to the grand jury, aided and abetted by each other, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description |
|:-----:|:----------------:|:------------|
| 1 | August 12, 2020 | Wire transfer of $66,400 that the SBA, in Colorado, caused to be routed in interstate commerce to Defendant **KIRKLAND**'s account at Financial Institution 1. |

All in violation of Title 18, United States Code, Section 1343 and 2.

Karl I. Knoche
Assistant United States Attorney
Chief, Criminal Division

Steven H. Lee
Assistant United States Attorney
* Lead Counsel